NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| VICTOR COLON, | : | Civil Action No. 19-11415 (SRC) |
|  | : |  |
| Plaintiff, | : |  |
|  | : | **OPINION** |
| v. | : |  |
|  | : |  |
| COMMISSIONER OF SOCIAL SECURITY, | : |  |
| Defendant. | : |  |

**CHESLER, District Judge**

This matter comes before the Court on the appeal by Plaintiff Victor Colon ("Plaintiff") of the final decision of the Commissioner of Social Security ("Commissioner") determining that he was not disabled under the Social Security Act (the "Act"). This Court exercises jurisdiction pursuant to 42 U.S.C. § 405(g) and, having considered the submissions of the parties without oral argument, pursuant to L. CIV. R. 9.1(b), finds that the Commissioner's decision will be vacated and remanded.

In brief, this appeal arises from Plaintiff's application for disability benefits, alleging disability beginning December 10, 2013. A hearing was held before ALJ Hilton Miller (the "ALJ") on February 27, 2018, and the ALJ issued an unfavorable decision on May 15, 2018, finding that Plaintiff had not been disabled during the period in question. After the Appeals Council denied Plaintiff's request for review, the ALJ's decision became the Commissioner's final decision, and Plaintiff filed this appeal.

In the decision of May 15, 2018, the ALJ found that, at step three, Plaintiff did not meet

or equal any of the Listings. At step four, the ALJ found that Plaintiff retained the residual functional capacity to perform light work, with certain limitations. At step four, the ALJ also found that Plaintiff is unable to perform any past relevant work. At step five, the ALJ determined, based on the testimony of a vocational expert, that there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with his medical impairments, age, education, past work experience, and residual functional capacity. The ALJ concluded that Plaintiff was not disabled within the meaning of the Act.

On appeal, Plaintiff argues that the Commissioner's decision should be reversed and the case remanded on a number of grounds, but this Court need only reach the argument that succeeds: the residual functional capacity determination at step four is not supported by substantial evidence.

In particular, Plaintiff challenges the ALJ's treatment of the evidence regarding back and neck problems at step four. The ALJ began the discussion of this evidence at step four with a review of Plaintiff's testimony, followed by a summary of the medical evidence regarding back and neck problems. In this summary, the ALJ stated: "The claimant visited the emergency room several times in 2013 and 2015, complaining of back and/or neck pain (C3F p. 51, 60, 70; C7F p. 12; C12F p. 15)." (Tr. 28.) The ALJ included the results of a number of imaging studies:

> An X-ray performed in February 2013 showed mild multilevel degenerative changes in the lumbar spine (C3F p. 55). An X-ray of the cervical spine performed in August 2014 revealed mild-to-moderate spondylotic changes of the cervical spine (C7F p. 19). An MRI of the cervical spine performed in September 2014 revealed multilevel degenerative disc disease of the cervical spine with evidence of mild to moderate central canal and foraminal stenosis at multiple levels (C4F p. 6).

(Tr. 28.) The ALJ does not mention that the MRI report, dated September 26, 2014, found not

only multilevel degenerative disc disease of the cervical spine, but also stated that at least three discs were herniated. (Tr. 545.) Also, the Court observes that the ALJ here reported objective imaging studies of both the cervical and lumbar areas of the spine. As the ALJ reported, the record contains a radiological report, dated February 10, 2013, which states: "mild multilevel degenerative disc disease is again appreciated." (Tr. 474.) The use of the word, "again," suggests that there may be additional evidence of mild multilevel degenerative disc disease, beyond what is reported in that document.

> The ALJ then states:
>
> At an orthopedic consultative examination with Dr. Marc Weber in May 2016, the claimant demonstrated intact muscle strength, muscle tone, sensation and reflexes (C14F p. 3). The claimant was able to perform tandem walking, perform a squat, ascend and descend the examination table independently and his gait pattern was within normal limits (C14F p. 3).

(Tr. 28.) The record contains a medical report from Dr. Weber, dated May 9, 2016. (Tr. 874-877.) The report begins with the subsection, "History of Present Illness." (Tr. 874) That paragraph makes clear that the present illness that Dr. Weber was evaluating was a seizure disorder. (Id.) There is no mention of any back, neck, or orthopedic problems. In the diagnostic impression subsection, Dr. Weber stated that this was a "54-year old male with a history of seizure disorder." (Tr. 875.)

In the next paragraph of the decision, the ALJ summarizes the evidence regarding Plaintiff's seizure disorder. The ALJ states: "The claimant reported to Dr. Weber that he was unable to describe the duration or frequency of his seizures (C14F)." (Tr. 28.) The ALJ's statement is supported by Dr. Weber's report, but the Court observes that this is evidence that the ALJ understood that Dr. Weber evaluated Plaintiff's seizure disorder, not his orthopedic

3

problems. Moreover, at the hearing, Dr. Lorber, the Commissioner's medical expert on orthopedics, stated that he had reviewed Dr. Weber's report and that Dr. Weber's examination "revealed no evidence of any significant neurological defects." (Tr. 60.) Dr. Lorber described Dr. Weber's evaluation and findings in his testimony, and Dr. Lorber did not make any statements which indicate that Dr. Weber either performed an orthopedic examination or made any findings about Plaintiff's back or neck problems. The evidence supports the inference that Dr. Weber did a neurological examination, not an orthopedic examination.

Having reviewed the treatment records, the ALJ made this summary statement: "In sum, the record shows mostly normal physical examination findings and no treatment for back pain." (Tr. 29.) The evidence of record, as summarized by the ALJ in the decision, does not support this summary statement. The ALJ had previously cited the evidence of treatment for back pain. As the ALJ reported, the record shows several visits to the emergency room for complaints of back pain. For example, the record shows that, on November 29, 2015, Plaintiff went to the emergency room with complaints of lower back pain radiating down his legs, with his feet feeling numb. (Tr. 861.) Plaintiff was prescribed Motrin and Flexeril for treatment of the back pain. (Tr. 863.) For another example, the record shows that Plaintiff went to the Emergency Room on February 10, 2013, with a complaint of back pain; the records note a history of herniated discs. (Tr. 470-73.) Plaintiff was treated with Flexeril and Percocet. (Tr. 472.) The ALJ's summary statement overlooked the evidence of treatment for back pain that the ALJ had already reported.

Furthermore, this summary statement fails to reflect the objective imaging evidence cited by the ALJ. The thrust of the summary statement is clear: there is no objective medical

4

evidence of serious back problems. This, however, is not an accurate summary of the medical evidence. The record shows objective imaging studies which document what appears to be significant spinal problems. The record shows treatment for back problems. The ALJ's summary of the medical evidence of back problems is not accurate. It is not supported by substantial evidence.

After reviewing the evidence regarding other medical problems, the ALJ turned to the medical opinion evidence regarding Plaintiff's back problems, and stated, here quoted in its entirety:

> As for the opinion evidence, great weight is given to the opinion of the medical expert, Dr. Lorber, who testified that the claimant does not meet or equal any medical listing, and would have an essentially light residual functional capacity. Specifically, Dr. Lorber found that the claimant would be able to occasionally lift up to 20 pounds, frequently lift up to 10 pounds, stand or walk for 6 hours per day with normal breaks, sit for 8 hours per day with normal breaks, and should not drive, climb ladders, ropes or scaffolds, or be exposed to unprotected heights, dangerous moving machinery, or other hazards. In support of this opinion Dr. Lorber noted the lack of medical imaging or treatment for the claimant's reported back and neck pain, as well as the normal physical examination findings, and the evidence that the claimant's seizure disorder is controlled with medications. Overall, the undersigned finds Dr. Lorber's opinion to be well-supported by the evidence he cited in support of his opinion.
> . . .
> Little weight is given to the opinion of the State Agency medical consultant, who found the claimant has no severe physical impairment (CSA). This is inconsistent with the medical imaging showing some mild-to-moderate disc disease, and with the findings of tenderness and spasms in physical examinations (C3F, C4F). However, the consultant's broader opinion of non-disability is consistent with that of Dr. Lorber, discussed above, and with the evidence that supports Dr. Lorber's opinion.

(Tr. 30.) Thus, at step four, as to Plaintiff's back and neck problems, the ALJ based his residual functional capacity determination on the opinion of Dr. Lorber. Dr. Lorber testified that he had never had any personal or professional contact with the Plaintiff. (Tr. 58.) It appears that Dr.

5

Lorber formed his opinion from a review of the medical records.

Plaintiff contends that Dr. Lorber's opinion does not constitute substantial evidence because the decision states that Dr. Lorber stated that there was no evidence in the record of any imaging studies. Plaintiff points to the hearing transcript, which shows that, at the hearing, Dr. Lorber testified:

> There's no record of an x-ray of the lumbar spine or an MRI of the lumbar spine or CT scan of the lumbar spine. Or for that matter of the cervical spine.

(Tr. 60-61.) On cross-examination, Dr. Lorber stated:

> I have stated that there are no imaging studies in the file demonstrating disc herniations or any other abnormalities. They're simply not there.

(Tr. 63.) Dr. Lorber's statements about the imaging studies in the record are incorrect. As the ALJ stated in the decision, the record contains at least one x-ray of the lumbar spine and multiple imaging studies of the cervical spine. As this Court's review of the records above has shown, there is at least one imaging study which found disc herniations. Dr. Lorber's statements about the evidence of record are not consistent with the evidence of record, as reported by the ALJ.

Moreover, Dr. Lorber's statements about the imaging evidence are contradicted by his own testimony. Earlier, Dr. Lorber stated:

> Had x-rays in both cervical spine, 15 August of '14. It showed degenerative changes. No further details are available. This is at 7F-4.

(Tr. 60.) The reference, "7F-4," refers to a report of an x-ray of the cervical spine, dated August 13, 2014. (Tr. 589.) The report stated: "There are mild-to-moderate spondylotic changes of the cervical spine." (Id.) Thus, when Dr. Lorber testified that there was no record of any x-ray of the cervical spine, this contradicted his previous testimony that there had been, in fact, an x-ray of the cervical spine.

6

As already quoted, the ALJ explained his decision to give Dr. Lorber's opinion great weight as follows: "In support of this opinion Dr. Lorber noted the lack of medical imaging or treatment for the claimant's reported back and neck pain, as well as the normal physical examination findings."  (Tr. 30.)  This statement is significantly inaccurate.  The hearing transcript shows that Dr. Lorber made no statement about treatment for back or neck pain, or the lack of it.  The hearing transcript also shows that Dr. Lorber made no statement about the findings of physical examinations of the back or neck.  At the hearing, Dr. Lorber did indeed state that he found no imaging studies, although this was in direct contradiction of what he had stated perhaps one minute earlier, and it is not supported by the evidence the ALJ cited.  The ALJ's description of Dr. Lorber's testimony is not supported by substantial evidence.

As to the impact of Plaintiff's history of back and neck problems on the residual functional capacity determination, the ALJ appears to have relied entirely on the testimony of Dr. Lorber.  The Court concludes that the ALJ's statements about Dr. Lorber's testimony are not supported by the hearing transcript.  Moreover, the Court finds that the statements that Dr. Lorber did make at the hearing are contradictory and not supported by the evidence of record.

Viewed as a whole, the ALJ's treatment of the beck and neck pain evidence shows the accretion of mistakes at many points.  The conclusion at the end is built upon the accretion of mistake after mistake.  Although the ALJ begins the discussion by acknowledging the objective medical evidence of degenerative spinal disease, and the records of treatment for back pain, by the end of the analysis, all those findings have disappeared from view.  The resulting residual functional capacity determination does not appear to be supported by the underlying evidence, which has been forgotten.

The Court reviews the Commissioner's decisions under the substantial evidence standard. This Court must affirm the Commissioner's decision if it is "supported by substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); Stunkard v. Sec'y of Health and Human Services, 841 F.2d 57, 59 (3d Cir. 1988); Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986).   Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Substantial evidence "is more than a mere scintilla of evidence but may be less than a preponderance."   McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004).   The reviewing court must consider the totality of the evidence and then determine whether there is substantial evidence to support the Commissioner's decision.   See Taybron v. Harris, 667 F.2d 412, 413 (3d Cir. 1981).   Based on the analysis presented, this Court concludes that the ALJ's residual functional capacity determination is not supported by substantial evidence.

For these reasons, this Court finds that the Commissioner's decision is not supported by substantial evidence.   The Commissioner's decision is vacated and remanded for further proceedings in accordance with this Opinion.

                                           s/ Stanley R. Chesler
                                         STANLEY R. CHESLER, U.S.D.J.

Dated: June 18, 2020